GARY L. TYSCH, ESQ. #128389
LAW OFFICES OF GARY L. TYSCH
16133 Ventura Boulevard, Suite 580
Encino, CA 91436-2411

(818) 995-9555 main
(818) 995-9550 facsimile

Attorneys for Plaintiff CREATIVE CARE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE CARE, INC., | CASE NO.: |
| Plaintiff, | COMPLAINT FOR BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER ERISA); |
| v. | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY; CIGNA HEALTH CORPORATION; and DOES 1 through 20, Inclusive, | |
| Defendants. | |

Plaintiff CREATIVE CARE, INC. (hereinafter referred to as "CCI")
complains and alleges:

## GENERAL AND INTRODUCTORY ALLEGATIONS

1.      This Complaint states a controversy over which this Court has subject
matter jurisdiction. This Court's jurisdiction is invoked pursuant to 29 U.S.C. §
1337 and 29 U.S.C. § 1132(e).  Plaintiff's claims arise under the Employee
Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*

2.      Venue is properly laid within the Central District of California pursuant
to 28 U.S.C. §1391 because the acts complained of have substantially occurred
within this district, because the Defendants reside in or may be found within this
district, because any and all breaches occurred within this district and because the

1    ends of justice so require.

2         3.    Plaintiff CCI is and, at all relevant times, was a corporation, organized

3    and existing under the laws of the State of California, providing professional

4    medical and mental health services and rehabilitation for patients suffering from

5    addiction.

6         4.    CCI provided and rendered medical services, treatments, diagnostic

7    services, pharmaceuticals, medical supplies and other complimentary medical

8    supplies, mental health, substance abuse and chemical dependence treatments and

9    services to members, subscribers and insureds of defendants CONNECTICUT

10   GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH

11   CORPORATION (hereinafter referred to collectively as "CIGNA") and DOES 1

12   through 20, inclusive.  Those members, subscribers and insureds of CIGNA were

13   patients of CCI and are hereinafter referred to collectively as the "Patients."  As a

14   result, CCI became entitled to reimbursement, remuneration and/or payment from

15   the CIGNA and DOES 1 through 20, inclusive for those services and supplies

16   rendered to the Patients.  The Patients have assigned all of their rights to payment

17   from CIGNA to CCI.  The Patients have also assigned all of their rights to recover

18   the benefits owed to them by CIGNA to CCI.

19        5.    Defendant CIGNA is and was a Connecticut corporation licensed to do

20   business in and is and was doing business in the State of California, as an insurer.

21   CCI is informed and believes that CIGNA is licensed by the Department of

22   Insurance and/or the Department of Managed Health Care to transact the business of

23   insurance in the State of California.  Defendant CIGNA is, in fact, transacting the

24   business of insurance in the State of California and is thereby subject to the laws

25   and regulations of the State of California.  At all relevant times, Defendants

26   administered and/or insured certain health Plans which covered the Patients.  Those

27   Plans permitted subscribers and Patients to obtain healthcare services from medical

28   and mental healthcare providers, such as CCI, which were "out-of-network" or

2
**COMPLAINT**

1   which had not entered into pre-negotiated, written contracts with CIGNA, setting

2   their rates of pay.

3       6.    The true names and capacities, whether individual, corporate, associate,

4   or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to CCI,

5   who therefore sues said Defendants by such fictitious names.  CCI is informed and

6   believes and thereon alleges that each of the Defendants designated herein as a DOE

7   is legally responsible in some manner for the events and happenings referred to

8   herein and legally caused injury and damages proximately thereby to CCI.  CCI will

9   seek leave of this Court to amend this Complaint to insert their true names and

10  capacities in place and instead of the fictitious names when they become known to

11  it.

12      7.    At all times herein mentioned, unless otherwise indicated, Defendants

13  were the agents and/or employees of each of the remaining Defendants, and were at

14  all times acting within the purpose and scope of said agency and employment, and

15  each Defendant has ratified and approved the acts of his agent.  At all times herein

16  mentioned, Defendants had actual or ostensible authority to act on each others'

17  behalf in certifying or authorizing the provision of services; processing and

18  administering the claims and appeals; pricing the claims; approving or denying the

19  claims; directing each other as to whether and/or how to pay claims; issuing

20  remittance advices and explanations of benefits statements; making payments to

21  CCI and its Patients.

22      8.    In compliance with the terms of the subject Plans, CCI and/or its

23  Patients have exhausted any and all claims review, grievance, administrative

24  appeals, and appeals requirements.  Alternatively, all review, appeal, administrative

25  grievances, or complaint procedures are excused by law, are violative of CCI's due

26  process rights, are or would be futile, or are otherwise unlawful, null, void, and

27  unenforceable.  CIGNA's pattern of behavior and refusal to reimburse CCI render

28  all potential administrative remedies futile. As a result of CIGNA's acts and/or

omissions, CIGNA is estopped from asserting that CCI has failed to exhaust its administrative remedies under ERISA.  Alternatively, by its failure and refusal to establish, maintain and follow a reasonable claim procedure process, CCI and/or its Patients have exhausted the administrative remedies available under the subject Plans and are entitled to pursue this action, inasmuch as CIGNA and DOES 1 through 20, inclusive, have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

## FACTS

9.      This complaint arises out of the failure of CIGNA to pay CCI for services rendered to ten of CCI's Patients who were, at all relevant times, enrollees, subscribers, members or insureds of CIGNA.  In order to protect the Patients' identities and rights of privacy, the Patients are identified by pseudonyms.  The unpaid amounts owed to CCI by CIGNA for each of the Patients is identified in the following table:

| Patient's Initials | Amount Owed to CCI |
| --- | --- |
| J.B. | $ 63,000.00 |
| N.C. | $ 59,000.00 |
| M.C. | $248,625.00 |
| C.G. | $ 45,550.00 |
| L.L. | $ 50,725.00 |
| M.M. | $   3,000.00 |
| J.M. | $112,600.00 |
| J.S. | $ 20,100.00 |
| C.T. | $ 99,200.00 |
| N.T. | $ 67,700.00 |
| **Total Owed** | **$769,500.00** |

///

**COMPLAINT**

1    10.    Each of the Patients received mental health, substance abuse and

2  chemical dependence treatments, services and hospitalization at CCI's facilities.

3  Payments are now due and owing by CIGNA and DOES 1 through 20, inclusive, to

4  CCI for the care, treatment and procedures provided to these Patients of CCI, all of

5  whom were insureds, members, policyholders, certificate-holders or were otherwise

6  covered for health, hospitalization, pharmaceutical expenses, diagnostics, mental

7  health, facility charges and major medical insurance through policies or certificates

8  of insurance issued and underwritten by Defendant CIGNA and DOES 1 through

9  10, inclusive.

10    11.    CCI is informed and believes that each of the Patients for whom claims

11  are at issue was an insured of CIGNA either as a subscriber to coverage or a

12  dependent of a subscriber to coverage under a policy or certificate of insurance

13  issued, administered and/or underwritten by CIGNA and DOES 1 through 20,

14  inclusive, and each of them.  CCI is informed and believes that each of the Patients

15  for whom claims are at issue was covered by a valid insurance agreement with

16  CIGNA for the specific purpose of ensuring that the Patients would have access to

17  medically necessary treatments, care, procedures and surgeries by out-of network

18  medical practitioners like CCI and ensuring that CIGNA would pay for the health

19  care expenses incurred by the Patients for services rendered by CCI.

20    12.    Alternatively, CCI is informed and believes that some of the Patients

21  for whom claims are at issue were covered by self-funded Plans which were

22  administered by CIGNA.  Those self-funded Plans provided coverage to the Patients

23  either as a subscriber to coverage or as a dependent of a subscriber to coverage

24  under a certificate of coverage administered by CIGNA and DOES 1 through 20,

25  inclusive, and each of them.  CCI is informed and believes that each of the Patients

26  for whom claims are at issue was covered by a valid employee benefit Plan,

27  providing coverage for medical and mental health expenses, for the specific purpose

28  of ensuring that the Patients would have access to medically necessary treatments,

1   care and procedures by out-of-network medical practitioners like CCI and ensuring

2   that CIGNA would pay for the health care expenses incurred by the Patients for

3   services rendered by CCI.

4       13.    At all relevant times, each of the Patients received medical and/or

5   paramedical services, procedures, mental health care, substance abuse treatment,

6   chemical dependence treatments or other healthcare services from physicians or

7   paramedical personnel associated with CCI at facilities owned and operated by CCI.

8   CCI and its employees who rendered treatments or performed procedures upon the

9   Patients were "out-of-network providers" or "non-participating providers" who had

10  no preferred provider contracts or other written contracts with CIGNA at the time

11  that the treatments or procedures were performed.  CCI had no written contracts

12  with CIGNA by which the amount that it would be paid was pre-established,

13  defined or identified at the time that the services or procedures were performed.

14      14.    At all relevant times, each of the Patients received medical and/or

15  paramedical services, procedures, mental health care, substance abuse treatment,

16  chemical dependence treatments or other healthcare services from physicians,

17  psychologists, paramedical and/or parapsychological personnel associated with CCI

18  at facilities owned and operated by CCI.  Upon the rendition of services to each of

19  the Patients, each of the Patients became legally indebted, responsible and liable to

20  CCI for the full cost of and for payment of those services.  Prior to the rendition of

21  services by CCI, CCI sought and obtained a guarantee from the Patients that they

22  would be legally responsible, liable and indebted for the full cost of and for payment

23  of those services to be rendered by CCI.  However, CCI agreed and advised the

24  Patients that it would defer seeking, collecting and recovering any balances owed by

25  the Patients until after CCI had first billed and recovered payments from the

26  Patients' health coverage Plans and after the Patients' co-insurance responsibility or

27  out-of-pocket responsibility had been determined and calculated by CIGNA. As a

28  result of the non-payment of benefits by CIGNA and DOES 1 through 20, inclusive,

each of the Patients remains liable, indebted and legally responsible for the services rendered by CCI to the Patients.  At no times has CCI ever waived, excused or otherwise declined to enforce it rights against the Patients to recover payment from those Patients, nor has CCI ever communicated any waivers of the Patients' legal responsibility, liability or indebtedness for the cost of services rendered to the Patients.  Similarly, CCI has never communicated or represented that it would accept any discounted payment or remuneration from Patients for the cost of their medical treatments.

15.    CCI and its employees who rendered treatments or performed procedures upon the Patients were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other written contracts with CIGNA at the time that the treatments or procedures were performed.  CCI had no written contracts with CIGNA by which the amount that it would be paid was pre-established, defined or identified at any time prior to the date that the services or procedures were performed.  As such, CIGNA was required to pay CCI in an amount and at rates which were set, calculated and determined solely by CIGNA, in accordance with the terms of the subject and applicable Plans.  Typically, the rates paid to out-of-network providers was a percentage of the usual and customary rate paid to other similar medical providers in the same geographical area, as determined by CIGNA and DOES 1 through 20, inclusive. Because each of the Patients' health benefit Plans was different and used different methodologies, rates and rubrics to calculate the amount owed by CIGNA, neither the Patients nor CCI was aware of the actual amount that would be paid by CIGNA in advance of CIGNA's adjustment and examination of the claims and calculation of benefits.  Typically the amounts payable by CIGNA and the patient's responsibility amounts were communicated by and through the issuance of Explanation of Benefit Statements and/or Explanation of Payment Statements by CIGNA, only after the claims had been adjusted and processed by CIGNA.

**COMPLAINT**

16.   At all relevant times, therefore, CIGNA and DOES 1 through 20, inclusive, were aware and knew that until they processed and issued Explanation of Benefit Statements or Explanation of Payment Statements to the members, Patients and CCI, neither CCI nor the Patients could determine the allowable amount due or any balance due from the Patients.  As such, it was impossible for CCI to collect coinsurance amounts or the Patients' out-of-pocket costs up front in advance of service.

17.   Each of the Patients requested CCI to render and provide medical treatment and professional services, knowing that CCI was an out-of-network, non-participating provider, who was not contracted with CIGNA.  Each of the Patients sought out, requested and requisitioned treatment and professional services from CCI and selected and chose CCI to provide him or her with professional services, treatments, medical and mental health care, based upon CCI's reputation in the community, experience, and availability to render immediate care.  Each of the Patients signed admissions agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for services rendered at CCI.

18.   Each of the Patients presented his or her insurance card to CCI, which card identified the Patient as an insured, subscriber and/or member of CIGNA.  Prior to the rendition of those professional services, treatments and the provision of care, CCI contacted CIGNA with regard to each of the Patients, at the telephone numbers identified on those same cards.  During those phone conversations, CCI identified the type of treatment that would be provided to the particular Patient to CIGNA and verified that each of the Patients was covered for such professional services and treatments, using the names and identification numbers listed on the insurance cards of the Patients.  At all relevant times prior to the provision and rendition of services to each of the Patients, CCI contacted CIGNA and DOES 1 through 10, inclusive, and each of them, by phone to obtain prior authorization, pre-

certification and consent from CIGNA to render treatment, admit the Patients to its facilities and to provide mental health care, substance abuse treatment and chemical dependency treatments upon each Patient.  At all relevant times prior to the provision and rendition of services to each of the Patients, CCI informed CIGNA of its intent to render services to the Patients and offered that it would provide certain specified services, procedures, treatments and supplies to the Patients in consideration of the payment for those services, procedures, treatments and supplies by CIGNA.  CIGNA accepted that offer and agreed to pay, reimburse, compensate, remunerate, and indemnify CCI directly for the specified services, treatments and supplies to be provided and rendered to each of the Patients. As a result of CIGNA's offer to pay for the services to be rendered by CCI, CCI was induced to and did provide and render professional services and treatments to the Patients at great costs to itself, fully expecting that it would be paid for the usual, customary and reasonable value of its services, after submission of its claims to CIGNA.  This expectation was further buttressed by the longstanding interactions, and business practices and customs that had been established between CCI and CIGNA over numerous years, which had resulted in CIGNA's processing and payments of hundreds of prior claims on behalf of patients who had received care and treatment at CCI.

19.    At all relevant times, CCI was advised by representatives and agents of CIGNA and DOES 1 through 10, inclusive, and each of them, that each of the Patients was insured, covered and eligible for coverage under their respective Plans or Policies for the services to be rendered by CCI, at facilities operated by CCI; that CCI was authorized to render services, treatment and care; and that CCI would be paid by CIGNA for performance of the services, care and/or treatments rendered by CCI, upon CCI's submission of claim forms and invoices to CIGNA.

20.    At no time prior to the provision of services to each of the Patients by CCI, during conversations between CCI and CIGNA, did CIGNA advise CCI that

9

**COMPLAINT**

each of the Patients' policies or certificates of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage for the procedures and treatments to be rendered to each of the Patients; nor was CCI offered copies of the applicable policies or certificates of insurance coverage, or evidence of coverage documents applicable to each of the Patients by CIGNA; nor was CCI otherwise or in any way made privy to the terms, conditions, limitations, exclusions and qualifications of those policies or certificates. Although CCI identified each of the Patients by name and membership number and identified the type of treatment proposed for the Patients, CCI was never informed by CIGNA of the specific amount that CCI would be paid; it was only told that CCI would be paid, reimbursed, remunerated, indemnified and/or compensated for the services which it rendered to the Patients.

21.    At all relevant times, CCI was led to believe that it would be paid a portion or percentage of its total billed charges, equivalent to the usual customary and reasonable amount charged by other similarly situated addiction rehabilitation facilities and specialists in the same geographical area.  In reliance upon the representations of CIGNA, CCI was induced to and did provide and render medical treatments and professional services to each of the Patients.

22.    At all relevant times, CCI was a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of the benefits payable under the subject Plans and insurance policies issued to and covering the Patients.  At all relevant times, CCI was a third party beneficiary of the contracts, plans and agreements, insuring and covering each of the Patients.  At all relevant times, CCI was authorized by law to act on behalf of the Patients with respect to filing claims with CIGNA, demanding production of documents from CIGNA, filing appeals on behalf of the Patients with CIGNA and otherwise pursuing actions on behalf of the Patients with respect to the Patients' Plans, in accordance with 29 C.F.R. 2560.503-1(b)(4).

23.    During those same conversations, CCI was expressly advised by

**COMPLAINT**

CIGNA's representatives that it would be paid directly (instead of CIGNA paying each of the Patients themselves), upon the submission of claims to CIGNA, as soon as the claims were adjusted, processed and reviewed by CIGNA.   During those same conversations, CCI was expressly advised, informed, instructed and told by CIGNA's representatives and agents that CCI should submit its claims to CIGNA for the services to be rendered, prior to billing each of the Patients (instead of requiring each of the Patients to submit claims to CIGNA themselves) and that CCI was not to seek to collect any coinsurance amounts from the Patients, before the claims for services to be rendered were submitted, adjusted, processed and paid by CIGNA.  In return for this concession by CCI and CCI's promises, covenants and agreement not to seek payment from the Patients, CIGNA promised to pay CCI directly, the amount that it owed to CCI for the services to be rendered (and agreed to accept an Assignment of Benefits through which each of the Patients assigned that Patient's CIGNA insurance benefits to CCI directly).  In accordance with the instructions offered by representatives of CIGNA, once CIGNA paid CCI, CCI was free to balance bill or charge the Patients and to collect any outstanding amounts (the difference between CIGNA's payment amount and the total of the billed charges) from the Patients.  As such, CIGNA guaranteed that it would first pay its portion of the charges for the services to be rendered to CCI, before the Patients had an obligation to pay the balance of the bill.

24.    At all relevant times, during the conversations between CCI and CIGNA, CCI was advised by representatives of CIGNA that CIGNA consented to the provision of treatments, services and/or supplies to be rendered by CCI to each and every one of the Patients; that CCI would be paid certain unspecified and undefined amounts for the services, treatments and/or supplies to be rendered to each of the Patients, after CCI had submitted claims for those services, treatments and/or supplies and after CIGNA had adjudicated, adjusted, and or examined the claims; and that the specific amount of payment to be paid to CCI would be

**COMPLAINT**

1  determined by CIGNA. Prior to the rendition of services by CCI, during the

2  conversations between CCI and CIGNA, CIGNA requested that CCI proceed to

3  provide services to each of the Patients, authorized CCI to render services to each

4  and every Patient, assented to an agreement that CCI render services to each and

5  every Patient, certified that each and every Patient was an insured, member,

6  subscriber or a covered member of CIGNA and that each and every Patient had

7  existing coverage for the services to be rendered by CCI which would provide

8  payment for the services to be rendered to each of the Patients by CCI.

9      25.    CCI is not privy to, nor does it possess or have access

10  to any of the Evidence of Coverage documents, Summary Plan Descriptions, Plan

11  Documents, policies or Certificates of Insurance which are issued to the Patients.

12  As such, CCI do not have knowledge of or access to the definition of an "allowable

13  amount" or "allowable benefit" as that term is defined or used by CIGNA, at any

14  time prior to the date that CIGNA processes, adjusts and pays each claim. These

15  definitions were not imparted by CIGNA to CCI during the insurance verification or

16  authorization process, either, nor was CCI referred to any source or reference that

17  would define, quantify or specify an "allowable amount" for the proposed services

18  or treatments or a methodology for determining the rates to be paid by CIGNA.

19      26.    At all relevant times, CCI provided medically necessary and

20  appropriate medical care and treatment to Patients holding valid insurance policies

21  and certificates issued by CIGNA.

22      27.    At all relevant times, CIGNA has improperly failed and refused to pay

23  CCI for medically necessary and appropriate services rendered to CIGNA's

24  insureds, subscribers and members for those treatments, services and/or supplies

25  rendered by CCI. For each of the Patient claims at issue in this action, CCI

26  provided medical services to members and insureds of CIGNA.

27      28.    Following the rendition of treatment by CCI to its Patients, invoices,

28  bills and claims were submitted to CIGNA and DOES 1 through 10, inclusive, and

each of them, for adjustment and payment.  In compliance with the request of CIGNA and DOES 1 through 10, inclusive, and each of them, medical records pertaining to each of the Patients' treatments were provided to CIGNA and DOES 1 through 10, inclusive, by CCI.  All requested information was supplied to CIGNA by CCI.

29.    For each of the claims at issue in this case, CIGNA has failed and refused to complete the claim examination process, has delayed issuing Explanation of Benefit and Explanation of Payment statements to CCI, has requested unnecessary and irrelevant information and documentation from CCI which has no bearing on the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with CCI.   For each of the claims at issue in this case, ultimately CIGNA has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

30.    For each of the claims at issue in this case, the "Explanation of Benefits Statements" did not explain how the claims were adjusted, disallowed or denied. For each of the claims at issue in this case, the "Explanation of Benefits Statements" provided a vague, ambiguous and uncertain explanation for the manner by which CIGNA based its claim determination, making it impossible for CCI or the Patients to intelligently challenge the denials on appeal.  Defendant's Explanation of Benefit statements were uninformative, false, and misleading, thereby depriving CCI and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for CIGNA's denials of benefits.

31.    At no time prior to the litigation of the subject claims has CIGNA ever advised, explained, informed or otherwise described to CCI how CIGNA determined to deny the claims and/or disallowed the claims.

32.    CIGNA and DOES 1 through 10, inclusive, and each of them, have failed and refused to pay benefits for the services rendered by CCI to the Patients in

**COMPLAINT**

1   violation of the terms of the subject Plans, policies, Explanation of Coverage

2   documents and other benefit plans, Summary Plan Descriptions and insurance

3   agreements.

### FIRST COUNT:

### FOR BREACH OF PLANS RELATING TO

### COVERAGE, PURSUANT TO 29 U.S.C.

### SECTION 29 U.S.C. CODE SECTION 1132(a)(1)(B)

### [AS AGAINST ALL DEFENDANTS]

9   33.   The allegations of all previous paragraphs are incorporated herein by

10   reference as if set forth in full.

11   34.   Defendants delivered to CCI's Patients various health insurance

12   policies or other certificates of insurance, health plans, evidence of coverage

13   documents, Summary Plan Descriptions and/or Plan Documents, in which they

14   promised to provide coverage for mental health services, substance abuse and/or

15   chemical dependency treatments.

16   35.   Under the terms of those policies, certificates of insurance, evidence of

17   coverage documents, Plan documents and Summary Plan Descriptions, Defendants

18   agreed to provide CCI's Patients with coverage, benefits and reimbursement for

19   mental health care treatments and/or substance abuse and chemical dependency

20   treatments.   Under the terms of those policies, certificates of insurance, evidence of

21   coverage documents, Plan documents and Summary Plan Descriptions, Defendants

22   agreed to provide CCI with coverage, benefits and reimbursement for those mental

23   health care treatments and/or substance abuse and chemical dependency treatments

24   rendered by CCI to CCI's Patients who were covered by Defendants and each of

25   them.

26   36.   At all relevant times, CCI was a beneficiary and/or third party

27   beneficiary of the subject policies, plans and contracts by which its Patients were

28   insured or covered by Defendants.   Alternatively, at all relevant times, CCI was

**COMPLAINT**

assigned the rights and remedies of its Patients to pursue claims and enforce the rights of the Patients under those plans and contracts by which its Patients were insured or covered by Defendants.  Beginning in or about 2015, each and every one of the Patients received mental health, substance abuse and chemical dependency services from CCI.  Shortly after those services were rendered, CCI submitted claims on behalf of the Patients to Defendants for adjustment, payment, reimbursement and coverage.  For each of these claims, Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

    (A)    Delaying the processing, adjustment and/or payment of claims for periods of time, greater than 45 days after submission of the claims, in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

    (B)    Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    (C)    Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    (D)    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

    (E)    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

    (F)    Failing to afford CCI and/or its Patients with a reasonable opportunity to engage in an appeal process, in violation of 29 U.S.C. § 1133(2);

(G)     Failing to afford CCI and/or its Patients with a reasonable opportunity to engage in an appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

(H)     Requiring CCI and/or its Patients to file more than two appeals of an adverse benefit determination prior to bringing a civil action, in violation of 29 C.F.R. 2560.502-1(c)(2);

(I)     Failing and refusing to provide CCI and/or its Patients with information pertaining to their rights to appeal, including, but not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

(J)     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), et seq.;

(K)     Failing and refusing to establish and maintain reasonable claims procedures, in violation of 29 C.F.R. § 2560.503-1(b), et seq.;

(L)     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503-1(b)(3);

(M)     Requiring that the Patients pay a fee or cost as a condition to making a claim or appealing an adverse claim or benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(3);

(N)     Precluding and prohibiting CCI from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

(O)     Failing and refusing to design, administer and enforce their processes, procedures and claims administration systems to ensure that benefit claim determinations are made in accordance with the governing Plan

16
**COMPLAINT**

documents, in violation of 29 C.F.R. § 2560.503-1(b)(5);

(P)   Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing Plan documents and Plan provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

(Q)   Failing and refusing to provide CCI and/or its Patients with reasonable access to and/or copies of documents, records and other information relevant to the denial of benefits, in violation of 29 U.S.C. §§ 1021, 1022 and 1132(c) and 29 C.F.R. § 2560.503-1(b)(3), thereby justifying the imposition of penalties under 29 U.S.C. § 1132(c);

(R)   Failing and refusing to pay benefits for services rendered by CCI which CIGNA had authorized, in violation of California Health & Safety Code § 1371.8 and California Insurance Code §796.04; and

(S)   Rescinding each and every authorization given to CCI in which CCI's Patients' care, treatment and services were pre-approved, authorized and certified by CIGNA, in violation of California Health & Safety Code § 1371.8 and California Insurance Code §796.04.

37.   The failure and refusal of Defendants to provide coverage, reimbursement, payment, and/or benefits for the substance abuse, chemical dependency and/or mental health benefits rendered by CCI to CCI's patients who were covered by Defendants and Defendants' denials of health insurance benefits and coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Defendants and CCI's Patients. CCI seeks reimbursement and compensation for any and all payments which it would have received and to which it will be entitled as a result of Defendants' failure to pay benefits and cover those services rendered by CCI to the Patients, in an amount presently unknown but to be set forth at the time of trial.

**COMPLAINT**

38.   Defendants have arbitrarily and capriciously breached the obligations set forth in the Plan issued by Defendants, and each of them.  Defendants, and each of them, have arbitrarily and capriciously breached their obligations under the ERISA Plan to provide CCI and the Patients with health benefits.

39.   As a direct and proximate result of the aforementioned conduct of Defendants in failing to provide CCI and the Patients with health benefits, CCI has been damaged in an amount equal to the amount of benefits CCI should have received and to which the Patients would have been entitled had Defendants paid the payments as required under the subject Plans.

40.   As a direct and proximate result of the aforesaid conduct of Defendants in failing to provide disability coverage as required, CCI has suffered, and will continue to suffer in the future, damages under the policy, plus interest and other economic and consequential damages, for a total amount to be determined at the time of trial.

41.   29 U.S.C. § 1132(g)(1) authorizes this court to award reasonable attorneys' fees and costs of action to CCI.  As a result of the actions and failings of the Defendants, and each of them, CCI has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Further, CCI anticipates incurring additional attorneys' fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown.  CCI therefore requests an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, CCI prays for judgment as follows:

## ON THE FIRST COUNT:

1.   For benefits payable by CIGNA under the subject employee benefit plans to reimburse CCI for those services rendered to the Patients by CCI;

2.   For reasonable attorneys' fees and costs;

3.   For prejudgment interest at a rate of 10% per annum as mandated by

**COMPLAINT**

1    California Insurance and Health & Safety Codes; and

2    3.    For such other relief as the court deems appropriate.

3    Dated: December 5, 2016            LAW OFFICES OF GARY L. TYSCH

4

5                                        By:_____/S/_____

6                                             GARY L. TYSCH
                                              Attorneys for Plaintiff, CREATIVE
                                              CARE, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**